UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                    :
MELANIE ZAMORA,                                                     :
                                                                    :
                                        Plaintiff,                  :
                                                                    :
                -v-                                                 :
                                                                    :
MORPHIX COMPANY, LTD,                                               :
                                                                    :
                Defendant, Counterclaim Plaintiff,                  :
                  and Third-Party Plaintiff,                        :
                                                                    :
                -v-                                                 :
                                                                    :
MELANIE ZAMORA,                                                     :
                                                                    :
                        Counterclaim Defendant,                     :
                                                                    :
MGZ CONSULTING, LLC,                                                :
                                                                    :
                        Third-Party Defendant.                      :
                                                                    :
-------------------------------------------------------------------- X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: January 10, 2017 |

15-cv-6532 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

In 2012, Morphix Company, Ltd. ("Morphix") hired MGZ Consulting, LLC ("MGZ") to consult on a project for the BP Exploration Operating Company ("BP"). This lawsuit arises out of a breakdown in that relationship that came to a head when BP rescinded a job offer to Melanie Zamora, MGZ's president. Prior to rescinding the offer, Morphix had informed BP, *inter alia*, that hiring Zamora would violate her non-compete agreement. Zamora subsequently sued Morphix for tortious interference with contract; Morphix counterclaimed against Zamora and filed a third-party complaint against MGZ for, *inter alia*, breach of contract.

1

Pending before this Court are the parties' cross-motions for summary judgment on some, but not all, claims. Although the procedural posture of the case is convoluted, resolution of the substantive issues is straightforward. For the reasons stated below, both motions for summary judgment are GRANTED in part and DENIED in part.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.

At all relevant times, Zamora was MGZ's president, managing member, and agent. (Morphix Rule 56.1 Statement ¶ 13, ECF No. 87; Certificate of LLC Formation, ECF No. 97-17; Zamora Dep. 12:1-3, ECF No. 97-13.) Morphix provides consulting and technical services focused on improving and maintaining organizational performance. (Morphix Rule 56.1 Statement ¶ 1.) In February 2011, Morphix began work for BP on the BP Well Advisor Project ("BPWA project"), which involved developing and deploying real-time monitoring and decision support systems to improve the performance and safety of BP's drilling operations. (*Id.* ¶¶ 6, 7.) MGZ (Zamora's company) was defined as the "Consultant" in a consulting agreement ("CA") with Morphix to work on the BPWA project with an effective date of January 17, 2012. (Morphix Rule 56.1 Statement ¶ 11; *id.* Ex. C ("CA"), ECF No. 87-3.) Zamora executed the CA on behalf of MGZ. (Morphix Rule 56.1 Statement ¶ 13.) Mark Newman, Morphix's managing director, signed on behalf of Morphix. (CA at 8.) The CA included, *inter alia*, the following provisions, each of which Zamora and MGZ are alleged to have breached: Sections 2.3, 4.2, 8.2, 9.1, 9.2, 14.2, and 16.1. The provisions may be divided into two general groups for purposes of

these motions—those that concern the protection of Morphix's intellectual property and confidential information (Sections 8.2, 9.1, 9.2, and 14.2), and those that concern the protection of Morphix's business interests.  The latter sections limit the work the consultant can accept (Section 2.3), direct the consultant to safeguard Morphix's commercial and contractual interests (Section 4.2), and require the consultant not to compete with Morphix (Section 16.1).  The Court sets forth these provisions in full[1]:

*Category 1: Morphix's Confidential Information & Intellectual Property*

- <u>Section 8.2</u>: "Unless otherwise agreed Morphix shall be entitled to the full and sole benefit of any invention or improvement (whether patentable or not) and to all Intellectual Property and Know How generated by the Consultant as a direct result of performing the Services for Morphix in accordance with this Agreement and Consultant hereby assigns in consideration for fees payable hereunder . . . all such rights to Morphix and acknowledges that such rights shall vest in Morphix solely and absolutely."

- <u>Section 9.1</u>: "Consultant will not, except as authorized or required for the proper performance of this Agreement, disclose to any person or company any Confidential Information[]. This restriction shall continue to apply after the termination or expiry of this Agreement, for whatever reason, without limit in time but shall cease to apply to information and knowledge which may come into the public domain other than through a breach of this Agreement."

- <u>Section 9.2</u>: "All notes and memoranda of any Confidential Information concerning the business of Morphix or any of its clients which shall be acquired, received or made by Consultant during the course of this

---

[1] In their submissions, the parties assume that the summary judgment motions as to the breach of contract claim are intended to be entirely dispositive.  However, they do not make specific arguments regarding each CA section that Morphix alleges Zamora and MGZ breached.  (*See* Countercl. & Third-Party Compl. ¶ 107, ECF No. 24 (listing Sections 2.3, 4.2, 8.2, 9.1, 9.2, 14.2, and 16.1).)  Morphix, for example, only tangentially mentions Section 8, and Zamora and MGZ make only general points related to Sections 14.2 and 16.1.  Nevertheless, given that each section falls into one of the two categories (e.g., confidential information or protection of business interests), the parties' arguments regarding the sections they do address are equally applicable to those they do not.  Accordingly, the Court addresses all CA provisions mentioned in Morphix's breach claim as pled.

Agreement shall be the property of Morphix and shall be surrendered by Consultant to Morphix at the termination of this Agreement or at the request of the Morphix at any time during the course of this Agreement."

- <u>Section 14.2</u>: "Upon the termination or expiration of this Agreement or any Work Order Consultant shall within fourteen days return and deliver to Morphix all Confidential Information and all other property and all copies thereof belonging to Morphix or may have been provided to it by Morphix, or which Consultant may have obtained as a result of undertaking the Work Order on behalf of Morphix in accordance with this Agreement. This includes, but is not limited to, equipment, books, reports, documents, specifications, papers, information (on whatever media and whether constituting Confidential Information or not) and this includes any items to be delivered as part of a Work Order whether complete or in process. Upon completion of this task Consultant shall explicitly certify in writing that it has fulfilled the requirements of this clause."

*Category 2: Protection of Morphix's Business Interests*

- <u>Section 2.3</u>: "Consultant warrants that it will not accept work from any third party; i) using Intellectual Property owned by Morphix or; ii) relating to products or services owned by Morphix."

- <u>Section 4.2</u>: "In the performance of its duties hereunder, Consultant shall act so as to safeguard the Intellectual Property, commercial and contractual interests of Morphix and shall comply with all reasonable requests and directions of Morphix or its nominee."

- <u>Section 16.1</u>: "Consultant undertakes that it shall not, without the prior written consent of Morphix, either during or within twelve months after completion of this Agreement or termination of this Agreement, which ever is the later, either directly or indirectly offer its services to, or accept work from, companies, individuals or organizations which were partners, associates, competitors or active prospects of Morphix during the period of twelve months immediately prior to the completion or termination of this Agreement. An active prospect is a company, individual or organization with whom Morphix was negotiating at the time of completion or termination of this Agreement or had held negotiations at any time during a period of twelve months prior to the completion or termination of this Agreement and where any such negotiations were known to Consultant."

Twelve work orders set forth the specific work MGZ performed for Morphix

on the BPWA project for the time period from January 30, 2012 to December 31,

4

2014.  (Morphix Rule 56.1 Statement ¶¶ 14-15; *see also id.* Ex. D ("Work Orders"),
ECF No. 87-4.)  Zamora is listed as the "Named Individual," the person tasked with
supplying services to Morphix, in each of the work orders.  (Work Orders.)  She
performed the work using a BP email address and a BP laptop, which she returned
to BP after the last work order was completed.  (Zamora Decl. ¶¶ 12, 13, ECF No.
97-1.)  The work orders are virtually identical except for the dates identifying the
period they governed and the description of the work to be performed.  (Morphix
Rule 56.1 Statement ¶ 16.)  Each work order was incorporated into the CA and was
governed by its terms and conditions.  (Work Orders at 1; CA § 1.1.4 ("Each and
every Work Order placed shall be expressly governed by this Agreement and shall
be deemed incorporated herein.").)  Section 3 of the work orders also provides that
"the Named Individual [Zamora] . . . undertakes with Morphix in the terms of
[clauses 2.3, 8, 9, 14, and 15] of the [CA] such that the same shall constitute direct
undertakings and agreements between Morphix and the Named Individual."  (Work
Orders § 3.)  Zamora signed the work orders.  The parties dispute whether she
signed the work orders in her individual capacity or solely in her capacity as MGZ
President.  (Zamora Resp. to Morphix Rule 56.1 Statement ¶ 17, ECF No. 88.)
Morphix claims—and Zamora disputes—that, by executing the work orders in her
individual capacity, Zamora also agreed to be personally bound by the CA.  (*Id.* ¶
20.)

     In September 2014, Zamora submitted a job application to BP.  (Morphix
Rule 56.1 Statement ¶ 27.)  On November 12, 2014, BP offered Zamora a job,

contingent on her passing a pre-employment screening process, which she accepted. (*Id.* ¶¶ 28, 29, 31.)  Morphix objected to Zamora accepting the BP job because of the restrictions in the CA.  (*Id.* ¶ 36.)  On November 25, 2014, Newman (of Morphix) sent an email to BP about Zamora's job offer.  (Newman Decl. Ex. 2, ECF No. 95.) That email said that the job offer was "in direct conflict with the proposal we have made to settle historic issues," including a proposed agreement not to "solicit or employ the other's staff going forward."  (*Id.*)  Newman also wrote that BP's job offer exposed Zamora to "legal action with regard to breaches of her own service contract with Morphix."  (*Id.*)  In a December 15, 2014 email to BP, Morphix's lawyers wrote that, "[i]f BP employs Ms. Zamora, she will be in breach of her Consulting Agreement with Morphix and BP will be interfering with that contractual relationship."  (ECF No. 97-11.)  BP ultimately revoked the employment offer on January 13, 2015.  (Zamora Decl. ¶ 17; BP Email, ECF No. 1-3 (notifying Zamora that BP was "rescinding our employment offer . . . due to the existence of a non-compete with your former employer").)

On February 18, 2015, Zamora sued Morphix in the U.S. District Court for the Southern District of Texas for a declaratory judgment (Count One) and tortious interference with contractual relations (Count Two).  (Compl., ECF No. 1.)  The case was transferred to this District on August 19, 2015.  (ECF No. 21.)  On October 2, 2015, Morphix answered the complaint and brought a counterclaim against Zamora and a third-party complaint against MGZ.  (Countercl. & Third-Party Compl.) Relevant to this opinion, the first cause of action of the counterclaim and third-

party complaint alleges that Zamora and MGZ breached Sections 2.3, 4.2, 8.2, 9.1, 9.2, 14.2, and 16.1 of the CA when they sought and obtained an employment offer from BP and failed to return Morphix's intellectual property. (*Id.* ¶ 107.) In the sixth cause of action, Morphix alleges that it is entitled to attorneys' fees and costs to the extent it prevails on any of its other claims. (*Id.* ¶¶ 130-132.) The other counts of the counterclaim and third-party complaint, which are not addressed by the parties' summary judgment motions, allege tortious interference of contract and business relations against Zamora and MGZ. (*Id.* ¶¶ 111-129.)

On July 7, 2016, Morphix filed a motion for summary judgment against Zamora only, requesting that the Court grant partial summary judgment in Morphix's favor on its breach of contract claim on all issues but damages, and grant summary judgment against Zamora on both the declaratory judgment and tortious interference with contractual relations claims. (Morphix Mot. Summ. J., ECF No. 69; Morphix Mem. Law 1, 12, ECF No. 86.) In the response in opposition to Morphix's motion for summary judgment, Zamora withdrew her declaratory judgment action against Morphix without prejudice. (Zamora/MGZ Resp. Opp'n 21, ECF No. 89.)[2] On July 12, 2016, Zamora and MGZ filed a motion seeking summary judgment against Morphix on its claim for breach of contract, and in Zamora's favor on her tortious interference of contract claim. (Zamora/MGZ Mot. Summ. J., ECF No. 83; Zamora/MGZ Mem. Law 1, ECF No. 84.) All parties request attorneys' fees

---

[2] Although Morphix's motion for summary judgment is directed at Zamora only, (*see* Morphix Mem. Law at 12 n.5), the response in opposition to that motion was filed by both Zamora and MGZ, (Zamora/MGZ Resp. Opp'n at 1).

and costs at various points in their briefs.[3]  Accordingly, the claims that are before the Court on the cross-motions for summary judgment are: (1) Morphix's breach of contract claim against Zamora and MGZ; (2) Zamora's tortious interference with contractual relations claim; and (3) the parties' requests for attorneys' fees and costs.[4]

## II.   LEGAL PRINCIPLES

Summary judgment may not be granted unless a movant shows, based on admissible evidence, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010).  The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III.   ANALYSIS

As stated above, only certain claims are before the Court on the cross-motions for summary judgment.  The Court addresses each in turn.

---

[3] It is not entirely clear from Zamora's and MGZ's motion whether they are moving for summary judgment on Count Six of Morphix's counterclaim and third-party complaint, which requests attorneys' fees and costs pursuant to Section 20.4 of the CA should Morphix prevail on any of its claims.
[4] This case was transferred from the Honorable Analisa Torres to the undersigned on November 22, 2016.

A.   Morphix's breach of contract claim against Zamora & MGZ

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  According to Morphix, Zamora and MGZ breached Sections 8.2, 9.1, 9.2, and 14.2 of the CA.  Each of these provisions concerns the protection of Morphix's confidential information, "know how," and intellectual property.  Morphix argues that Zamora and MGZ breached these provisions when Zamora returned the laptop BP had provided to her and when she attached the CA and work orders to her publicly filed complaint.  Separately, Morphix claims that Zamora and MGZ breached certain CA provisions when Zamora accepted BP's job offer, including Section 2.3, which limits the work the consultant can accept; Section 4.2, which requires the consultant to "safeguard the . . . commercial and contractual interests of Morphix"; and Section 16.1, which is a non-compete provision.

As an initial matter, the parties do not dispute that Morphix and MGZ signed a valid consulting agreement.  There are, however, genuine disputes of fact as to whether Zamora is individually bound under the work orders and CA and, therefore, personally liable for any breach of those agreements, and whether MGZ can be held liable for Zamora's acceptance of BP's job offer and alleged disclosure of Morphix's intellectual property and confidential information.  The Court concludes that, even assuming that Zamora and MGZ are alter egos of one another, there is insufficient evidence to support a triable issue on the question of breach with respect to the CA provisions relating to disclosure of Morphix's confidential

9

information and intellectual property (Sections 8.2, 9.1, 9.2, and 14.2).  In contrast, there are triable issues of fact as to whether the provisions relating to Zamora's commitment to protect Morphix's commercial and contractual interests, and acceptance of BP's job offer (Sections 2.3, 4.2, and 16.1) were breached.

        1.    <u>Claims regarding breach of Morphix's confidential information and intellectual property</u>

As discussed above, Sections 8.2, 9.1, 9.2, or 14.2 of the CA address the protection of Morphix's intellectual property, "know how," or confidential information.  Morphix argues that Zamora and MGZ breached each of the four provisions either by: (1) returning Zamora's laptop, which allegedly contained Morphix's confidential information and intellectual property, to BP rather than to Morphix; or (2) attaching copies of the CA and work orders as exhibits to the complaint.  (*See* Morphix Mem. Law at 3, 17; Morphix Resp. Opp'n at 17-18, ECF No. 91.)  There are no triable issues of fact with regard to any claim based on these provisions.

Critically, Morphix has not proffered any evidence that any of its intellectual property or confidential information resided on the BP laptop.  During his deposition, Newman (Morphix's managing director) agreed that, "at no time has Morphix made any attempt to examine or take an image of the computer that Ms. Zamora gave back to BP," (Newman Dep. 254:15-19, 256:6-8, ECF No. 97-4), and testified that he did not know what Morphix intellectual property or confidential information Zamora actually possessed, (*id.* at 256:6-8).  Additionally, Morphix fails even to mention the BP laptop in its Rule 56.1 Statement.  Thus, the summary

allegations asserting disclosure or misuse of confidential information fail for the simple reason that no such information is identified. *See, e.g., Barkley v. Penn Yan Cent. Sch. Dist.*, 442 F. App'x 581, 582 (2d Cir. 2011) (summary order).

But in addition, claims of breach based on these provisions fail for another reason: lack of a triable issue as to the element of damage. Morphix has failed to demonstrate that it suffered any harm by the disclosure of any intellectual property or confidential information on the laptop.[5] Newman's report is Morphix's only support for its damages claims. (Newman Decl. Ex. 1 ("Newman Report"), ECF No. 95.) But nowhere does Newman state that Morphix was in fact harmed by BP's receipt of the laptop. The closest Newman gets is when he says that, "without possession of its own Intellectual Property and Know How relating to the BPWA Project, Morphix had no opportunity to make a timely proposal to BP to use another Morphix associate to replace Zamora and MGZ on the BPWA Project." (*Id.* at 7.) This statement is made, however, without any proffer as to any information actually known to be on the laptop. Moreover, Newman goes on to state that, when

---

[5] Morphix has moved for summary judgment on the liability aspect of its breach of contract claim against Zamora. (Morphix Mot. Summ. J. at 1; Morphix Mem. Law at 1, 12.) Zamora and MGZ, however, do not limit their motion for summary judgment on that claim to liability only. In all events, whether or not Morphix has moved on the quantum of damages does not eliminate that issue from those before the Court: Damages are an essential element of a breach of contract claim. *See LNC Invs., Inc. v. First Fid. Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999) ("Under New York law . . . '[t]he failure to prove damages is . . . fatal to [a] plaintiff's breach of contract cause of action." (alterations in original) (internal quotation marks omitted)). In other words, without proving some amount of damages, a party cannot prevail on the liability aspect of a breach of contract claim. *See id.* So long as it is clear that the party has sustained some damage, however, summary judgment may be granted on the remainder of a contract claim with a damages determination to await trial. *See, e.g., U.S. Bank Nat'l Ass'n v. Southwest Airlines Co.*, No. 07 Civ. 11131, 2009 WL 2163594, at *12 (S.D.N.Y. July 20, 2009); *Citicorp Leasing, Inc. v. Kusher Family Ltd. P'ship*, No. 05 Civ. 9163, 2006 WL 1982757, at *8 (S.D.N.Y. July 14, 2006) (finding that defendants were liable to plaintiff but that "[t]riable issues of fact as to the calculation of various damages components still remain, and this must be decided at trial").

BP decided to replace Zamora and MGZ with in-house personnel, Morphix was itself required to provide the BP employee with access to Morphix's confidential information, suggesting that Morphix never lacked access to needed materials.  (*Id.*) Finally, Morphix has previously taken a position inconsistent with any harm resulting from Zamora's relinquishment of the laptop.  Morphix's attorney previously communicated to Zamora that once she "turned in her laptop and [] explained where her documents [we]re stored," she was "in compliance with her contractual obligations."  (Letter from Morphix Counsel 1, ECF No. 97-12.)

There is also no evidence that Zamora's attachment of the CA and the twelfth work order to her complaint actually harmed Morphix.  Newman asserts that by not filing these attachments under seal, Zamora gave "Morphix's competitors, existing and prospective clients, and existing and prospective associates, access to Confidential Information that they can use to their commercial advantage," (Newman Report at 8), and "caused Morphix economic harm in the amount of $228,440 over the next five years" because, *inter alia*, "prospective clients would have visibility [in]to Morphix['s] gross margins and would seek a reduction" in fees, (*id.* at 9).  This assertion is not based on anything more than speculation and argument.  No facts—such as loss of business—are cited as support.  It is insufficient to raise a triable issue on the damages element of that breach claim.  Moreover, Morphix did not raise any issue of filing the CA or work orders under seal until March 2016—ten months after Zamora served Morphix with the summons and complaint.  (Sealing Request, ECF No. 51; Mot. Transfer Venue 1, ECF No. 8.)  If

Morphix "was concerned about the disclosure of confidential information, it should have immediately moved the court to seal the documents." *ING Global v. United Parcel Serv. Oasis Supply Corp.*, No. 11 Civ. 5697, 2012 WL 4840805, at *6 (S.D.N.Y. Sept. 25, 2012) (dismissing on summary judgment defendant's counterclaim that plaintiff violated the confidentiality provisions of an agreement by not redacting or filing under seal the exhibits attached to the complaint).  And when it did request permission to file the CA and work orders under seal, Judge Torres denied the request, noting that the common law presumptive right of access to judicial documents is particularly strong where, as here, the documents at issue are material to the court's disposition of the case.  (Order, ECF No. 53.)  In addition, this argument is directly contradicted by Morphix's own reliance on these same materials in support of its May 2015 motion to transfer venue.  (*See* Morphix Mot. Transfer Venue Exs. A & B, ECF No. 8-1.)  That motion was filed on the public docket.

Accordingly, because Morphix's suspicions about the contents of the BP laptop are insufficient to create a genuine dispute of material fact, and because Morphix has failed as a matter of law to establish damages related to Zamora's alleged disclosure of Morphix's confidential information and intellectual property, Zamora's and MGZ's motion for summary judgment on Morphix's breach of contract claim as it pertains to CA Sections 8.2, 9.1, 9.2, and 14.2 is granted, and Morphix's motion for summary judgment against Zamora on these same grounds is denied.

2.     Section 2.3

The Court next analyzes whether summary judgment is warranted to either side on the breach of contract claim relating to Section 2.3.  That section provides that "Consultant warrants that it will not accept work from any third party; i) using Intellectual Property owned by Morphix or; ii) relating to products or services owned by Morphix."  (CA § 2.3.)  There are four issues relevant to whether Section 2.3 has been breached by Zamora and MGZ: (1) whether Zamora is bound by the CA at all (that is, whether MGZ and Zamora are alter egos), (2) whether Zamora "accepted" work from a third party, (3) whether such work relates to products or services owned by Morphix, and (4) whether Morphix was harmed.[6]  There are triable questions of fact as to issues (1), (3), and (4).

First, as stated above, there are triable issues of fact as to whether Zamora is a party to the CA—a question which requires resolution of the alter-ego issue.  That is a fact-intensive inquiry not amenable to resolution at this stage.  Additional triable issues arise with regard to the third and fourth questions.  For the third question, the Court agrees with MGZ and Zamora that the only grammatical reading of Section 2.3 is that it prohibits the consultant from accepting any *work* from a third party where such work assignment "relat[es] to products or services owned by Morphix."  Morphix's interpretation of the provision—that it is meant to prohibit the consultant from accepting work from a third party when that *third party's* business—broadly stated—"relat[es] to products or services owned by

---

[6] It is undisputed that MGZ (the entity) is defined as the "Consultant" in the CA; the parties dispute whether the record is sufficient to show that MGZ is simply Zamora's alter ego.

14

Morphix"—greatly extends the reach of the provision and is incorrect. (*See, e.g.*, Morphix Reply 20.) The provision clearly sets up subparts (i) and (ii) as modifying the word "work." With this interpretation in mind, there is a genuine triable issue regarding whether the job Zamora accepted "relat[ed] to products or services owned by Morphix." On the one hand, Zamora testified that her work on the BPWA project would not have been helpful for or relevant to the position BP offered her. (*See, e.g.*, Zamora Dep. at 174:16-175:16.) On the other hand, BP offered Zamora a position related to the maintenance of blowout preventers, (*id.* at 170:13-19), and the BPWA project likewise had a blowout preventer component, (*id.* at 170:22-23).

As to the fourth issue, Newman's report is sufficient to create a genuine dispute about whether Morphix was harmed by Zamora's acceptance of BP's job offer. In particular, Newman states that, without advance notice that Zamora had sought and accepted BP's job offer, Morphix was unable to submit a transition plan to BP, and that BP in turn decided it would move in house the work Zamora had been performing. According to Newman, this series of events resulted in lost income of $298,129. (Newman Report at 7, 9.) Although Zamora and MGZ argue that Morphix has offered no evidence to support its statement that BP's decision to go in house was due to any wrongdoing by Zamora, the contentions in Newman's report are sufficient to establish at least a genuine issue of material fact with regard to damages. (Zamora/MGZ Reply 6-7, ECF No. 96.)

While these questions of fact preclude summary judgment, the Court notes that the second question does not require the resolution of disputed fact issues. The

argument that Zamora never "accepted" work from BP because she never executed an employment contract is based on a misreading of the relevant contractual provision. (Zamora/MGZ Mem. Law at 32.) The correct question is not whether Zamora ever became a BP employee, (*id.* at 34), but whether Zamora "accepted work" from BP. Zamora agreed with Morphix's Rule 56.1 statement that she "accepted the [job] offer from BP" on November 12, 2014. (Zamora Resp. to Morphix Rule 56.1 Statement ¶ 29.) Zamora also concedes that she "previously testified that she had received a formal offer of employment [from BP] which she had accepted." (*Id.* ¶ 33; *see also* Zamora Dep. at 187:18-20 (testifying that she "g[o]t more than a conditional offer from BP" because she "got the job offer").) Therefore, even if the offer was conditioned on a background check, there is no genuine dispute that Zamora still "accept[ed] work from [a] third party." (CA § 2.3.)

Accordingly, because there are issues of fact about whether Zamora or MGZ breached Section 2.3 of the CA, the parties' motions for summary judgment with regard to this provision are denied.

3.   Section 4.2

The Court now turns to Section 4.2. That provision of the CA requires the Consultant to "safeguard the . . . commercial and contractual interests of Morphix." To determine whether summary judgment is appropriate, the Court must analyze two separate issues: (1) whether MGZ and Zamora are alter egos—a question as to which there are triable issues as discussed above, and (2) whether Zamora failed to "safeguard" the "commercial and contractual interests" of Morphix; there are triable issues as to this second question. Newman has stated that Zamora's acceptance of

16

BP's offer resulted in the loss of work on the BPWA project for Morphix. (Newman Report at 7.) Zamora denies this. (Zamora/MGZ Reply at 6-7.) Accordingly, the parties' motions for summary judgment on Morphix's breach of contract claim as it relates to Section 4.2 of the CA are denied.

          4.    <u>Section 16.1</u>

Lastly, the Court examines whether summary judgment is appropriate with regard to Section 16.1. Section 16.1 is a non-compete clause. It provides that the "Consultant . . . shall not, without the prior written consent of Morphix, either during or within twelve months after completion of this Agreement or termination of this Agreement . . . either directly or indirectly offer its services to, or accept work from, companies, individuals or organizations which were partners, associates, competitors or active prospects of Morphix during the period of twelve months immediately prior to the completion or termination of this Agreement." (CA § 16.1.)

To determine whether summary judgment is appropriate with regard to this provision, the Court must examine four issues: (1) whether MGZ and Zamora are alter egos (which the Court has already determined presents a triable fact question), (2) whether Zamora "accepted" work (which the Court has already determined is undisputed and in the affirmative), (3) whether Zamora, while working on the BPWA project, knew that Morphix and BP were negotiating the renewal of their contract (an issue that Zamora concedes, (Zamora Dep. at 113:2-19)), and (4) whether Morphix was harmed by any breach of this provision. The triable issues with regard to questions (1) and (4)—already discussed above—preclude summary judgment with respect to a breach claim based on this provision.

B.    Zamora's tortious interference with contractual relations claim

Zamora also has asserted a claim for tortious interference of contract.  Under New York law, this claim requires "the existence of [a] valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007).[7]  Here, Zamora and MGZ admit that Zamora "did not have a final contract in place with B.P. when Morphix contacted B.P." (Zamora/MGZ Mem. Law at 35.)  Instead, they argue that "there is no dispute that BP and Zamora were in the position to enter into an employment contract relationship," and that Morphix "deliberately took steps to prevent that contract from taking place." (*Id.*)

As Morphix notes in its opposition, and which is uncontested in Zamora's and MGZ's reply, plaintiff did not bring a tortious interference with business relations claim.  (*See* Morphix Resp. Opp'n at 30; *see also* Compl. ¶¶ 39-47 (bringing a second cause of action for "Tortious Interference with Contractual Relations"); Zamora/MGZ Reply.)  Accordingly, the Court will not construe Zamora's second cause of action as a claim for tortious interference with business relations.  Because

---

[7] Morphix, in its opposition brief, notes that, "[w]hile some of the acts that gave rise to Zamora's tortious interference with a contract claim occurred in Texas, because those acts related to duties arising under the [CA] and Work Orders, the claim may be subject to the New York choice of law provision governing those agreements." (Morphix Resp. Opp'n at 28 n.13.)  Because Zamora and MGZ only cite to New York law, and because, insofar as certain principles are necessary to resolution of these motions, there are no material differences between tortious interference with contract under Texas and New York law, the Court refers to New York law for convenience.  *See Hometown 2006-1 1925 Valley View LLC v. Prime Income Asset Mgmt., LLC*, No. 13 Civ. 04440, 2016 WL 6464485, at *2 (N.D. Tex. Mar. 29, 2016) (noting that, under Texas law, tortious interference with contract requires (1) the existence of a contract, (2) willful and intentional interference, (3) causation, and (4) damages).

18

Zamora and MGZ concede that no contract existed between Zamora and BP, summary judgment on Zamora's second cause of action is granted in favor of Morphix.[8]

C.   The parties' claims to attorneys' fees and costs

It is unclear from their motion whether Zamora and MGZ are moving for summary judgment on Count Six of Morphix's counterclaim and third-party complaint.  It is clear from the briefing, however, that Zamora and MGZ, as well as Morphix, seek attorneys' fees and costs.  The CA provides that, "[i]n the event legal proceedings are commenced arising out of or relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection therewith." (CA § 20.4.)  In light of the Court's rulings, however, "it is premature to declare either party 'the prevailing party' within the meaning of this provision." *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 506 (S.D.N.Y. 2012).  Accordingly, to the extent that any of the parties have sought summary judgment on Count Six of Morphix's counterclaim and third-party complaint, those motions are denied.

*          *          *

---

[8] In addition to granting Morphix's motion for summary judgment on this ground, the Court grants summary judgment in Morphix's favor on Zamora's and MGZ's motion for summary judgment on this claim.  Zamora and MGZ are not procedurally prejudiced by this decision because "the court's *sua sponte* determination is based on issues identical to those raised by the moving party." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 140 (2d Cir. 2000).  Here, in bringing their own motion on this claim and defending against Morphix's motion, Zamora and MGZ had a full and fair opportunity to establish their case and provided no "indication that [they] might otherwise bring forward evidence that would affect the court's summary judgment determination." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991).  As the Court has before it all the facts necessary to find for Morphix, the Court may grant summary judgment in its favor on this issue *sua sponte*.

In summary:

(1)  Zamora's and MGZ's motion for summary judgment on Morphix's breach of contract claim as it pertains to Sections 8.2, 9.1, 9.2, and 14.2 of the CA is GRANTED, and Morphix's motion for summary judgment against Zamora on those same grounds is DENIED;

(2)  The parties' motions for summary judgment on Morphix's breach of contract claim as it pertains to Sections 2.3, 4.2, and 16.1 of the CA are DENIED;

(3)  The Court grants summary judgment in Morphix's favor on Zamora's tortious interference with contract claim;

(4)  To the extent that any party has sought summary judgment on Count Six of Morphix's counterclaim and third-party complaint related to attorneys' fees and costs, those motions are DENIED;

(5)  Zamora has withdrawn her declaratory judgment claim against Morphix; and

(6)  Morphix's tortious interference claims against Zamora and MGZ were not raised in these motions for summary judgment and therefore have not been addressed by the Court.

## IV.   CONCLUSION

For the reasons set forth above, Zamora's and MGZ's motion for summary judgment is GRANTED in part and DENIED in part, and Morphix's motion for summary judgment is GRANTED in part and DENIED in part.

The Clerk of Court is directed to terminate the motions at ECF Nos. 69 and

83.

SO ORDERED.

Dated:      New York, New York
           January 10, 2017

_____
           KATHERINE B. FORREST
           United States District Judge