```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MELANIE ZAMORA,
                                                    MEMORANDUM AND ORDER
                    Plaintiff,
                                                    15 Civ. 6532 (NRB)
       - against -

MORPHIX COMPANY, LTD.,

                    Defendant,
             Counterclaim Plaintiff,
       and Third-Party Plaintiff,

       - against –

MELANIE ZAMORA,

             Counterclaim Defendant,

MGZ CONSULTING, LLC,

             Third-Party Defendant.
----------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court are the parties' cross-motions for attorneys' fees and costs. For the reasons stated below, the Court denies both motions.

## Background

Morphix Company, Ltd. ("Morphix") is a consulting firm that uses subcontractors to provide services to its clients. In 2012, MGZ Consulting, LLC, entered a Consulting Agreement ("CA" or the "Agreement") with Morphix to be one of its subcontractors. Melanie Zamora ("Zamora"), MGZ's president, executed the Agreement on

MGZ's behalf.  ECF No. 1, Ex. A; Trial Tr. at 79:13-16.  The Agreement operated through "Work Orders" that Morphix could submit to MGZ and that MGZ could accept or decline.  See CA §§ 1.1.4, 1.1.5, 4.1; Trial Tr. at 125:14-25.  The Agreement required that Work Orders be "documented in writing and incorporated by reference into this Agreement." CA § 5.1; see also id. § 1.1.4 ("Each and every Work Order placed shall be expressly governed by this Agreement and shall be deemed incorporated herein.").

Several provisions of the Agreement sought to protect Morphix's business interests, including a noncompete provision that MGZ "shall not, without the prior written consent of Morphix, either during or within twelve months after completion of this Agreement or termination of this Agreement, whichever is the later, either directly or indirectly offer its services to, or accept work from, companies, individuals or organizations which were partners, associates, competitors or active prospects of Morphix . . . ." CA § 16.1.  The Agreement also included a fee-shifting clause that, "[i]n the event legal proceedings are commenced arising out of or relating to this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection therewith."  CA § 20.4.  A choice-of-law clause supplied that New York law governed the Agreement.  Id.

In 2011, British Petroleum ("BP") hired Morphix to consult on its Well Advisor Project to improve BP's drilling operations.

2

Between 2012 and 2014, Morphix submitted and Zamora accepted twelve Work Orders to consult on the Project. See DX6. In accordance with the Agreement, each Work Order incorporated the Agreement, including the noncompete provision. See, e.g., id. at 1; CA § 5.1. The last Work Order expired on December 31, 2014. See ECF No. 1, Ex. B.

In the fall of 2014, before the last Work Order had expired, Zamora applied for and accepted a job with BP that would pay her $205,000 per year, a $25,000 signing bonus, and an annual cash bonus. See Morphix's Rule 56.1 Statement, Ex. F. Upon learning of this, Morphix notified BP that Zamora's prospective employment "le[ft] her open to legal action with regard to breaches of her own service contract with Morphix," and, at BP's request, sent BP a copy of the Agreement. Trial Tr. at 94, 98. In January 2015, shortly before Zamora was to begin her job with BP, BP emailed her and rescinded its offer "due to the existence of a non-compete with your former employer." DX19.

The next month, Zamora filed a complaint in the Southern District of Texas asserting two causes of action against Morphix. ECF No. 1 ("Zamora Compl."). First, she sought a declaratory judgment "that all of the claimed limitations on Plaintiff's activities and the non-competition restrictions contained in Paragraph 16 of the Consulting Agreement are inapplicable, invalid and not enforceable as to the Plaintiff." Zamora Compl. ¶ 37.

3

Zamora sought this declaration on the basis that she signed the Agreement solely in her official capacity as president of MGZ, and therefore the Agreement did not personally bind her. Id. ¶¶ 11, 19, 25, 32. Second, Zamora asserted that Morphix's discussions with BP regarding its hiring of her tortiously interfered with her contractual relations with BP. Id. at 8. She requested damages, attorneys' fees, and costs. Id. ¶ 47. After Zamora filed her complaint, the case was transferred to the Southern District of New York pursuant to a forum selection clause in the Agreement, and the case was assigned to Judge Analisa Torres. ECF No. 20.

After the case was transferred, Morphix answered Zamora's complaint and asserted counterclaims against Zamora and third-party claims against MGZ. ECF No. 24 ("Morphix Compl."). Morphix's first claim was that Zamora and MGZ breached seven provisions of the Agreement, including the noncompete clause, "when they sought and obtained an employment offer from BP and when they failed to return to Morphix Morphix's Intellectual Property and Know How." Morphix Compl. ¶ 107. Morphix's second through fifth causes of action were for various forms of tortious interference, for example, tortious interference with contractual relations. See, e.g., Id. ¶¶ 112-14. Morphix's sixth and final claim was for attorneys' fees and costs under the Agreement. Id. ¶¶ 131-32. Morphix also contended that Zamora was MGZ's alter ego

4

and that the Agreement's restrictions thus applied to her individually. Id. ¶¶ 29-40.

After the close of discovery, both parties filed motions for summary judgment. Morphix moved for summary judgment against both of Zamora's claims, and for summary judgment on its breach of contract claim, except as to damages. See ECF No. 70. In response to Morphix's motion, Zamora withdrew her declaratory judgment claim and opposed summary judgment on her tortious interference claim. See ECF No. 89. Zamora also moved for summary judgment on her tortious interference claim and against Morphix's breach of contract claim. See ECF No. 84. Both parties' motions sought attorneys' fees and costs. See ECF Nos. 70, 84.

After the parties filed their motions, the case was reassigned from Judge Torres to Judge Katherine B. Forrest, who decided them. See Zamora v. Morphix Company, Ltd., No. 15-cv-6532, 2017 WL 95220 (S.D.N.Y. Jan. 10, 2017). The Court granted Morphix summary judgment on Zamora's tortious interference claim, thus eliminating her only remaining claim. See id. at *8. The Court also granted summary judgment for Zamora against Morphix's breach of contract claim as to four of the seven provisions of the Agreement that Morphix claimed Zamora had breached. See id. at *4-6. However, with respect to the three other provisions of the Agreement, the Court found triable issues of material fact. See id. at *6-7. It also deemed it "premature" to determine whether any party was the

"prevailing party" under the Agreement's fee-shifting clause. Id. at *8. Following the Court's decision, Morphix withdrew three of its four tortious interference claims. ECF No. 119.

Trial occurred later that year. Before the Court empaneled the jury, Zamora conceded that she was MGZ's alter ego and thus personally bound by the Agreement. Trial Tr. at 41-43. As that admission left Morphix's remaining tortious interference claim duplicative of one that it had withdrawn, the Court dismissed it. ECF No. 139. The parties also agreed that whether any party was due attorneys' fees and costs should be resolved after trial. Trial Tr. at 11-12. Accordingly, the only issues for trial were whether Zamora violated the Agreement, and, if so, the damages to which Morphix was entitled. While presenting its case, Morphix contended that it lost $600,000 of revenue, $300,000 of which would have been profit, because of Zamora's alleged violation of the Agreement. See Id. at 113-14. At the close of Morphix's case, Zamora moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a), arguing that Morphix had failed to prove damages. Id. at 211-213. The Court reserved its judgment on the motion, however. Id. at 212. After the jury was charged but prior to a verdict, Zamora renewed her motion. Again, the Court elected to reserve judgment. Id. at 355. The jury returned a verdict for Morphix, finding that Zamora and MGZ breached the

Agreement, and that Morphix was entitled to $33,000 in damages. ECF No. 144.

After trial, Zamora filed a motion for judgment notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b), which the Court granted. See Zamora v. Morphix Company, Ltd., No. 15-cv-6532, 2018 WL 1033228 (S.D.N.Y. Feb. 21, 2018). The Court concluded that New York law governed the Agreement, that damages were an affirmative element of a breach of contract claim under New York law, and that there was "insufficient evidence that Morphix suffered damage of any kind as a result of Zamora's decision to seek employment with BP, regardless of whether such conduct violated the CA." Id. at *6-7. The Court clarified, however, that its decision was not intended to disturb the jury's conclusion that Zamora violated the Agreement. Id. at *7. The Court nonetheless entered judgment in favor of Zamora and MGZ on Morphix's breach of contract claim. It reserved judgment, however, on the issue of attorneys' fees and costs. ECF No. 163.

Morphix unsuccessfully appealed the Court's judgment notwithstanding the verdict to the Second Circuit. Zamora v. Morphix Company, Ltd., 764 Fed. App'x. 96 (2d Cir. 2019). While the appeal was pending, Judge Forrest retired from the bench, the case was reassigned to Judge Robert W. Sweet, and then the case was reassigned again to the undersigned. With all of the claims in this case finally resolved, the parties filed cross-motions for

7

attorneys' fees and costs under the Agreement. The motions also requested attorneys' fees on the ground that the other party acted in bad faith during the litigation.

## **Legal Standards**

"The United States follows the 'American Rule' regarding attorney's fees: 'The prevailing party may not recover attorney's fees as costs or otherwise.'" Castillo Grand, LLC v. Sheraton Operating Corp., 719 F.3d 120, 123 (2d Cir. 2013) (quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975)) (internal alterations omitted). Two exceptions to the American Rule are relevant here.

**Attorneys' Fees Awarded Under a Contract**

"Under the American Rule . . . parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." U.S. Fid. and Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004) (internal quotation marks omitted). "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (citing Hooper Assocs., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989) ("the court should not infer a

party's intention to waive the benefit of the [American] [R]ule unless the intention to do so is unmistakably clear from the language of the promise.")). Although whether to award attorneys' fees generally falls within the Court's discretion, "where a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993).

The Agreement's fee-shifting clause states clearly that "the prevailing party shall be entitled to reasonable attorneys' fees and costs." CA § 20.4. To determine whether Zamora or Morphix may recovery any attorneys' fees or costs, then, the Court must determine which party, if any, is the "prevailing party."

"Much of the case law regarding the determination of a 'prevailing party' arises in the context of interpretation of statutes containing fee-shifting provisions or interpretation of Federal Rule of Civil Procedure 54, which entitles the prevailing party to recover costs, but not attorneys' fees." Matsumura v. Benihana Nat'l Corp., No. 06-cv-7609, 2014 WL 1553638, at *4 (S.D.N.Y. April 17, 2014). That case law "is of little value here," however, because it relies on "'two strong equitable considerations'" – first, "that a plaintiff bringing a statutory claim 'is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority,'" and second, that attorneys' fees "awarded to a prevailing plaintiff in the

statutory context are awarded 'against a violator of federal law'" – neither of which applies where, as here, fee-shifting arises solely from a contract.  See id. (quoting Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 419 (1978)).

Although the Agreement does not define the phrase "prevailing party," its choice-of-law clause provides, and neither party disputes, that New York law governs its terms.  CA § 20.4.  Moreover, "under Erie principles, attorney's fees are considered substantive and are controlled by state law in diversity cases."  Antidote Int'l. Films, Inc. v. Bloomsbury Pub., PLC, 496 F.Supp. 2d 362, 364 (S.D.N.Y. 2007) (internal quotation marks and alterations omitted).  Accordingly, the Court uses New York contract law to interpret the contractual phrase "prevailing party."  See Matsumura, 2014 WL at *4-5.

Under New York law, where a contract awards attorneys' fees to the "prevailing party," "a fundamental consideration is whether that party has 'prevailed with respect to the central relief sought.'"  Chainani v. Lucchino, 942 N.Y.S.2d 735, 736 (N.Y. App. Div., 4th Dep't 2012) (quoting Nestor v. McDowell, 615 N.E.2d 991, 994 (N.Y. 1993)).  Accordingly, "[t]o determine whether a party has 'prevailed' for the purpose of awarding attorneys' fees, the court must consider the 'true scope' of the dispute litigated and what was achieved within that scope."  Sykes v. RFD Third Ave. I Assocs., LLC, 833 N.Y.S.2d 76, 77 (N.Y. App. Div., 1st Dep't 2007)

(quoting <u>Excelsior 57th Corp. v. Winters</u>, 641 N.Y.S.2d 675, 676 (N.Y. App. Div., 1st Dep't 1996)). "To be considered the 'prevailing party,' one must simply prevail on the central claims advanced, and receive substantial relief in consequence thereof." <u>Id.</u> at 77-78 (citing <u>Bd. of Mgrs. of 55 Walker St. Condo. v. Walker St., LLC</u>, 774 N.Y.S.2d 701 (N.Y. App. Div., 1st Dep't 2004)).

**The Bad Faith Exception to the American Rule**

"One of the recognized common law exceptions to the American [R]ule against fee shifting is that attorneys' fees may be awarded where the party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Kerin v. U.S. Postal Serv.</u>, 218 F.3d 185, 190 (2d Cir. 2000) (quoting <u>Alyeska</u>, 421 U.S. at 258-59). To award attorneys' fee for bad faith, "the district court must find that the losing party's claim was (1) meritless; and (2) brought for improper purposes such as harassment or delay." <u>Id.</u> (internal footnote omitted). "The award of fees pursuant to this exception is an exercise of a federal court's inherent equitable powers." <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 776 F.2d 383, 390 (2d Cir. 1985). District courts have "very broad discretion to deny an application to shift fees" for bad faith. <u>Mali v. Federal Ins. Co.</u>, 720 F.3d 387, 394 (2d Cir. 2013).

<u>**Application**</u>

**Neither party may recover attorneys' fees or costs under the Agreement.**

11

Evaluating the true scope of the dispute litigated and what was achieved within that scope, neither Zamora nor Morphix were the "prevailing party." See, e.g., Blue Sage Capital, L.P. v. Alfa Laval U.S. Holding, Inc., 92 N.Y.S.3d 268 (N.Y. App. Div., 1st Dep't 2019) (concluding that neither party was the prevailing party under a contractual fee-shifting clause).

Zamora failed to achieve anything she sought to achieve through suing Morphix, and therefore cannot be the "prevailing party." The central claim Zamora advanced in this litigation, which she sought to vindicate through a declaratory judgment, was that the Agreement could not be enforced against her because she executed it solely in her capacity as president of MGZ. She withdrew that claim, however, and then conceded that she was MGZ's alter ego and thus personally bound by the Agreement. She also lost the only other claim—for tortious interference with contractual relations—that she had asserted against Morphix. She accordingly received no relief, let alone "substantial relief," for either of her claims. Sykes, 833 N.Y.S.2d at 78. The only relief Zamora could plausibly argue she received in this litigation was release from the burden of owing Morphix $33,000 of damages for her violation of the Agreement. That relief, however, was despite her failed claims, not "in consequence" of them. Id. Moreover, it was utterly insubstantial compared to what she aimed to accomplish, which would have allowed her to commence a job that

would have paid her hundreds of thousands of dollars per year, plus bonuses. See Matsumura, 2014 WL at *5 (noting the nonprevailing plaintiffs' "relatively modest" gain was "even further dwarfed by the amount of damages they sought in their complaint").

Morphix fared no better than Zamora. Morphix's central claim was that Zamora breached seven provisions of the Agreement when she applied for and accepted a job with BP. Morphix lost that claim as to four provisions on summary judgment, and then lost as to the remaining three provisions when the Court granted judgment notwithstanding the verdict. Morphix also withdrew or agreed to dismiss all of the tortious interference claims it had levied against Zamora. Morphix therefore not only failed on its "central claim[]," but also on all of its claims, and obtained zero relief as a result. See Sykes, 833 N.Y.S.2d at 77-78.

Although the Court did not disturb the jury's finding that Zamora violated the Agreement, that finding does not mean Morphix prevailed because, as Judge Forrest concluded, Morphix failed to establish the damages element of a New York breach of contract claim. See Zamora, 2018 WL at *6; see also Hampshire Props. V. BTA Bldg. and Developing, Inc., 996 N.Y.S.2d 129, 130 (N.Y. App. Div., 2d Dep't 2014). Even if, for example, Morphix had received nominal damages and thus won its breach of contract claim, such relief would hardly have constituted the "substantial relief"

required for an award of contractual attorneys' fees in New York. See, e.g., Sykes, 833 N.Y.S.2d at 78 (prevailing plaintiff had received $75,000, plus interest); Excelsior 57th Corp., 641 N.Y.S.2d at 676 (prevailing party had won $109,524.62); Wiederhorn v. Merkin, 952 N.Y.S.2d 478, 480 (N.Y. App. Div., 1st Dep't 2012) (prevailing petitioner had won $1,462,040, plus interest). Indeed, in that scenario the outcome still would have paled in comparison to the $300,000 of profit that Morphix maintained at trial it had lost, and thus still would have been "at odds with the result that [Morphix] w[as] hoping to achieve when [it] filed" its counterclaims. Matsumura, 2014 WL at *5. Moreover, Morphix "acknowledged—behaviorally if not explicitly—that the outcome was adverse to [its] position by filing [an] appeal[] to the Second Circuit," challenging only the Court's conclusion that it had failed to establish any damages. Id. (finding the plaintiff "cannot lay claim to prevailing party status" in part because its appeal of the decision reflected a contrary belief).

Blue Sage Capital, L.P. v. Alfa Laval U.S. Holding, Inc., 92 N.Y.S.3d 268 (N.Y. App. Div., 1st Dep't 2019), reinforces our conclusion that neither Zamora nor Morphix prevailed in this litigation. After Blue Sage sued Alfa Laval, Alfa Laval asserted a counterclaim for breach of contract based on seven alleged misrepresentations by Blue Sage. See id. at 269. Ultimately, Blue Sage lost its claims, and a jury ruled in Alfa Laval's favor

14

on two of the seven alleged misrepresentations. See id. Describing these outcomes as "mixed results," the First Department concluded that "neither party had substantially prevailed on the central claims advanced and that therefore neither was entitled to attorneys' fees" under the contractual fee-shifting clause. Id. at 269. While Blue Sage plainly failed to prevail, the court explained that Alfa Laval also had not prevailed because "it failed to show that the two misrepresentations in its breach of contract claim on which the jury ruled in its favor . . . were 'central' to its case against Blue Sage or were any more significant than the remaining five alleged misrepresentations on which the jury ruled against it." Id. Just as Blue Sage lost its claims, so, too, did Zamora. By contrast, whereas Alfa Laval triumphed on at least some of its claims, Morphix was victorious on none. If Alfa Laval's "mixed results" were insufficient for it to be the "prevailing party" because the misrepresentations on which it won were not central to its case, then Morphix's uniform failure to succeed on any of its claims, including what was indisputably its central claim, mandates the conclusion that it also did not prevail.

Every claim Zamora and Morphix asserted against each other in this litigation was withdrawn or failed, and neither party obtained any relief. Simply put, everyone lost. Accordingly, neither party

15

was the "prevailing party," and therefore neither party may recover attorneys' fees or costs under the Agreement.

**Neither party may recover attorneys' fees for bad faith.**

Zamora and Morphix both request attorneys' fees pursuant to the bad faith exception to the American Rule. After considering the entire record, as well as each party's arguments that the other party acted in bad faith, the Court concludes that neither party's claims or conduct rose to the level of bad faith, and therefore declines to award any attorneys' fees on that basis.

### Conclusion

For the foregoing reasons, the parties' cross-motions for attorneys' fees and costs are denied. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 199 and 203, and to close the case.

**SO ORDERED.**

Dated: New York, New York
September 5, 2019

*/s/ Naomi Reice Buchwald*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE